UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In Re:                                                    Chapter 7

Diamond Finance Co., Inc.,                                Case No. 820-71877-A736

        Debtor.

----------------------------------------------------------X

**Application in Support of Trustee's Request to Modify the Automatic Stay to Permit the Entry of the Decision & Order Dated October 21, 2020 Issued by the Supreme Court of the State of New York, Second Appellate Division and to Direct Eugenie Barnett and Levi Huebner & Associates, P.C. to Deliver to the Trustee an Amount Equal to All Sums Received by Ms. Barnett and/or Levi Huebner & Associates, P.C. in <u>Satisfaction of a Vacated Default Judgment</u>**

TO:    The Honorable Robert E. Grossman,
        United States Bankruptcy Judge:

        Marc A. Pergament, Chapter 7 Trustee ("Trustee") of the Estate of Diamond Finance Co., Inc. hereby presents in support of his motion for an Order: (a) pursuant to 11 U.S.C. §§ 105 and 362(d)(1) and Rule 4001 of the Federal Rules of Bankruptcy Procedure: modifying the automatic stay to permit the entry of the Decision & Order dated October 21, 2020 ("Decision & Order") issued by the Supreme Court of the State of New York, Second Appellate Division ("Appellate Division"), in the matter of *Eugenie J. Barnett, respondent v. Diamond Finance Company, Inc., appellant*, Docket Number 2018-00053, which vacated a clerk's judgment entered against the Debtor in favor of Ms. Barnett; (b) pursuant to Rule 69 of the Federal Rules of Civil Procedure and Rule 5015(d) of the Civil Practice Law and Rules, directing Ms. Barnett and her counsel, Levi Huebner & Associates, P.C. ("LHA"), to deliver to the Trustee all sums received by Ms. Barnett and/or LHA in satisfaction of the now vacated default judgment; and (c) for such other

and further relief as this Court deems just and proper ("Application"), respectfully represents as follows:

1. On April 14, 2020, an involuntary petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code.

2. Upon the Debtor's consent, the Court entered an Order of Relief on May 20, 2020. Mr. Pergament was appointed Interim Trustee, duly qualified and has acted in such capacity.

## SUMMARY OF ARGUMENT

3. The Decision & Order arises from a dispute between the Debtor and Eugenie Barnett. In the Decision & Order, the Appellate Division vacated a default judgment entered in favor of Ms. Barnett and directs the lower court to conduct an inquest to assess damages.

4. According to Ms. Barnett, the Debtor caused her to suffer damages as a result of the Debtor's repossession of the automobile that she was driving at that time.

5. Prior to Ms. Barnett's ownership, the automobile was owned by Natasha Graham who obtained financing from the Debtor to assist her with the purchase of the automobile. As part of the transaction between Ms. Graham and the Debtor, Ms. Graham granted a security interest in the automobile in favor of the Debtor to secure Ms. Graham's repayment of the loan.

6. Ms. Graham defaulted under her loan agreement with the Debtor, which triggered the Debtor's right to lawfully repossess the automobile. The Debtor was not aware of any purported sale by Ms. Graham to Ms. Barnett. Nonetheless, assuming, but not conceding that such sale occurred, it was subject to the Debtor's security interest and all rights associated with such interest.

7. Although the nature or basis of any claim against the Debtor is unclear to the Trustee, through this Application, the Trustee is seeking, *inter alia*, to modify the automatic stay to

permit the entry of the Decision & Order and have Ms. Barnett participate in the claims process before this Court like all unsecured creditors.

8. In addition, prior to the entry of the Decision & Order, Ms. Barnett and her counsel restrained funds in satisfaction of the default judgment. According to Ms. Barnett's counsel, the restrained funds have been disbursed. Under these circumstances, the Trustee is seeking an Order of this Court directing Ms. Barnett and her counsel to deliver to the Trustee an amount equal to the restrained funds.

## BACKGROUND[1]

9. On or about February 5, 2016, Ms. Barnett obtained a default judgment against the Debtor from the New York State Supreme Court, Kings County ("State Court"). The Clerk's Judgment was entered by the Clerk of the State Court without any prior determination of liability or damages by a Judge ("Default Judgment"). (Annexed hereto as Exhibit "B" is a copy of the Default Judgment.)

10. Thereafter, the Debtor received a copy of a retraining notice that was served on Debtor's bank. Due to a service of process issue, the Debtor was not aware that the Default Judgment had been entered. (*See* Ex. A, ¶ 2.)

11. Subsequently, Debtor's counsel obtained copies of the pleadings, including the Default Judgment. The Debtor attempted to vacate the Default Judgment by asserting that it was not properly served and that it had a meritorious defense to Ms. Barnett's claims. (*See* Ex. A, ¶ 3.)

---

[1] The foregoing facts are drawn from the Affidavit presented by the Debtor's principal, Robert Diamond, to the State Court. (A copy of the Affidavit is annexed hereto as Exhibit "A.")

3

12. On October 21, 2020, the Appellate Division issued the Decision & Order vacating the Default Judgment because Ms. Barnett was not entitled to a default judgment because the amount of the alleged damages she requested and obtained was not based on a "sum certain." (Annexed hereto as Exhibit "C" is a copy of the Decision & Order.)

13. The Appellate Division directed that the State Court conduct an inquest to assess damages.

A. <u>The Facts Underlying the State Court Action</u>

14. On or about June 12, 2010, Natasha Graham of Waterbury, Connecticut, purchased a 2002 Mercedes Benz ML 320. On the date of purchase, the Vehicle had been driven for 90,862 miles ("Vehicle"). (*See* Ex. A, ¶ 5.)

15. Ms. Graham financed the purchase of the Vehicle with the assistance of the Debtor. To memorialize the agreement, Ms. Barnett executed a Retail Installment Contract and Security Agreement ("Finance Agreement"). (Annexed hereto as Exhibit "D" is a copy of the Finance Agreement.)

16. Under the Finance Agreement, Ms. Graham granted to the Debtor a security interest in the Vehicle. (*See* Ex. D, Payment Schedule, ¶ 1.)

17. On June 14, 2010, Ms. Graham executed a Retail Certificate of Sale, with an endorsement indicating the Debtor was the lienholder. (Annexed hereto as Exhibit "E" is a copy of the Retail Certificate of Sale.)

18. A lien was placed on the title of the Vehicle, which title was in the name of Ms. Graham and issued by the State of Connecticut. (*See* Ex. A, ¶ 6.)

19. In the fall of 2012, Ms. Graham defaulted under the Finance Agreement. (*See* Ex. A, ¶ 7.)

20. As a result of Ms. Graham's default, the Vehicle was repossessed on November 29, 2012. (*See* Ex. A, ¶ 7.)

21. Also on November 29, 2012, an individual identified as "Len" contacted the Debtor. Len advised the Debtor that he was calling on behalf of Len's Body Shop, that Len's Body Shop had purchased the Vehicle from Ms. Graham for the sum of $3,500 and subsequently sold it to a third party, allegedly, Ms. Barnett. (*See* Ex. A, ¶ 7.)

22. It is the Debtor's understanding that Connecticut sends the original title to the lenders to hold. Unlike New York, where the lienholder is identified on the title, the original Connecticut title is delivered to and held by the lender until the loan is satisfied or otherwise released. (*See* Ex. A, ¶ 8.)

23. Given how Connecticut deals with titles, the Debtor was and is unaware how any of the purported transfers described above occurred without its permission.

24. Since the lien was never satisfied and Ms. Graham was in default, the Debtor duly exercised its right to repossess the Vehicle. To the extent that Len's Body Shop sold the Vehicle to Ms. Barnett, Len's Body Shop and Ms. Barnett acted at their own peril, subject to the Debtor's superior rights. (*See* Ex. A, ¶ 8.)

25. Unfortunately, the Debtor did not timely interpose an Answer to Ms. Barnett's complaint and the Default Judgment was entered.

26. On or about June 14, 2017, the sum of $65,389.04 was deducted from the Debtor's bank account. This amount equaled two times the judgment amount. On June 30, 2017, apparently after a check was issued to the New York City Marshal, the sum of $26,706.90 was credited to the Debtor's account. Thus, the sum of $38,682.14 was the "Restrained Funds." (Annexed hereto as Exhibit "F" is a copy of the Debtor's Bank Statement for June 2017.)

27. The Debtor sought to vacate the Default Judgment in its entirety, but that relief was denied because more than one (1) year had elapsed between the entry of the Default Judgment and the motion to vacate. (*See, e.g.,* Ex. A.)

28. On October 21, 2020, the Appellate Division issued the Decision & Order and remitted the matter to the State Court for an inquest to assess damages.

29. In *Stephan B. Gleich & Assocs. v. Gritsipis*, 2011 NY Slip Op 5483, ¶ 3, 87 A.D.3d 216, 222, 927 N.Y.S.2d 349, 354 (2d Dep't 2011), a decision relied on by the Appellate Division in the Decision & Order, the court noted that:

> CPLR 3215(a) allows a party to seek a default judgment by application to the clerk if the claim is "for a sum certain or for a sum which can by computation be made certain." Where the clerk is presented with the requisite proof, he or she "shall enter judgment for the amount demanded in the complaint or stated in the [summons with notice], plus costs and interest" (CPLR 3215 [a]). While the statute directs that the amount of the judgment shall be the amount demanded in the complaint or summons with notice, the language has been interpreted by the Court of Appeals as allowing the plaintiff to elect a lesser sum. (Citations omitted.)

30. A review of the docket reveals that the clerk was not "presented with the requisite proof."

31. The court in *Gleich* also noted that the "limitation of Default Judgments to claims for a 'sum certain' 'contemplates a situation in which, once liability has been established, there can be no dispute as to the amount due'. The statute is intended to apply to only the most liquidated and undisputable of claims, such as actions on money judgments and negotiable instruments." (*Id.* (citations omitted).

32. The Default Judgment states the sum of $25,000.00 was due and owing, before interest and costs. Putting aside the Debtor's contention that it acted properly in repossessing the

Vehicle and that it does not owe any money to Ms. Barnett, Ms. Barnett's complaint indicates that she "sent a demand to Finance Company demanding payment of $25,000 (the 'Balance') due and owing." (Annexed hereto as Exhibit "G" is a copy of the State Court Complaint.)

33. However, Ms. Barnett did not submit any documentation to the State Court to support a $25,000.00 demand, which is surprising given that Ms. Graham purchased the Vehicle in 2010 for a "Cash Price" in the sum of $13,941.10, plus interest (*see* Ex. D) and the Galves Auto Price List for Older Used Cars & Trucks Edition indicates the wholesale value of the Vehicle as of the date of repossession was less than $5,200.00.  (*See* Ex. A, ¶ 10; *see also* annexed hereto as Exhibit "H" is a copy of the Galves Auto Price List for Older Used Cars & Trucks Edition.)[2]

34. Although the Debtor contends that it has not caused Ms. Barnett to suffer any damages, the reference to the Galves valuation was to evidence that the claim of $25,000.00 set forth in the Default Judgment had no basis whatsoever.

B.  The Trustee Attempts to Recover the Restrained Funds

35. By letter dated October 23, 2020, the Trustee's counsel wrote to LHA to request the return of the Restrained Funds. The Trustee's counsel indicated that the inquest called for by the Appellate Division was stayed. (Annexed hereto as Exhibit "I" is a copy of the October 23, 2020 letter.)

36. The Trustee's counsel also indicated that Ms. Barnett may file a proof of claim with this Court and supplied LHA with a proof of claim form.

37. By letter dated October 26, 2020, LHA responded by stating that neither LHA nor Ms. Barnett was in possession of the Restrained Funds. (Annexed hereto as Exhibit "J"

---

[2] The Debtor initially used the Galves report from November 2012, which showed a value of $5,200.00. Unfortunately, the copy of report has degraded over time and become illegible so the Trustee is presenting a report from December 2012, which shows a value of $5,100.00 and is consistent with the November 2012 valuation in the sum of $5,200.00.

is a copy of the October 26, 2020 letter.) LHA further indicated it believed that the Decision & Order was null and void in light of the automatic stay.

38. By letter dated October 27, 2020, the Trustee's counsel indicated that he disagreed with LHA's position, but that the Trustee would seek to modify the automatic stay, if necessary. (Annexed hereto as Exhibit "K" is a copy of the October 27, 2020 letter.) LHA did not respond to that letter.

39. The Trustee's counsel additionally stated that the amount of the Restrained Funds ($38,682.14) should be delivered to the Estate because otherwise, Ms. Barnett and LHA would be unjustly enriched to the detriment of the creditors of the Estate.

40. Erring on the side of caution, the Trustee is seeking an Order of this Court modifying the stay to permit the Decision & Order to be duly entered.

41. In addition, the Trustee requests that Ms. Barnett and LHA be ordered to deliver funds to the Trustee in the amount of $38,682.14, *i.e.* the Restrained Funds.

42. Such relief is appropriate here because Ms. Barnett and LHA were aware of the Debtor's challenge to the Default Judgment at the time they restrained the funds.

43. In opposition to the motion to vacate the default, LHA stated, in part, as follows:

> 18. On or about August 1, 2017 counsel for the Defaulting-Defendant informed my office that they had filed a proposed OSC, and that on August 3, 2017 at 9:30 a.m., the Defaulting-Defendant would be appearing before the ex parte part in room 295 seeking interim relief., see DE 18-19.
>
> 17. Two weeks later, on August 2, 2017, after deducting its fee, the NYC Marshal issued a check to Eugenie representing the garnished funds from Signature Bank and same were duly paid to Eugenie and her counsel. (Annexed hereto as Exhibit "L" is a copy of the October 11, 2017 Affirmation.)

8

44.     Instead of retaining the funds until the issues regarding the motion to vacate the Default Judgment were resolved, counsel released the funds. The Trustee contends that counsel also did so at his and Ms. Barnett's peril, particularly since the Default Judgment was vacated based on Ms. Barnett's use of improper methods in obtaining it.

## THE APPLICATION SHOULD BE GRANTED

45.     Section 541 of the Bankruptcy Code vests a debtor's bankruptcy estate with the debtor's legal and equitable interests in property as of the commencement of the bankruptcy case. 11 U.S.C. § 541. (Lexis, 2020.)

46.     The filing of a bankruptcy petition under any chapter of the Bankruptcy Code triggers a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §§ 362(a)(3), (a)(6). (Lexis, 2020.)

47.     The automatic stay is a fundamental protection offered to a debtor, which is designed to promote equal treatment amongst creditors and to provide the debtor with some relief from the financial pressures which caused the debtor to file its petition. *See Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998).

48.     Section 362(d)(1) of the Bankruptcy Code provides that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause." 11 U.S.C. § 362(d)(1). (Lexis, 2020.)

49.     "Although 'cause' is not defined in the Bankruptcy Code, courts in this district have found that the desire to continue litigation in another forum may constitute 'cause'

under appropriate circumstances." *In re Pers. Communs. Devices, Ltd. Liab. Co.*, 556 B.R. 45, 59 (Bankr. E.D.N.Y. 2016) (Trust, U.S.B.J.)

50. The Trustee first learned of the matter involving Ms. Barnett on or about October 22, 2020, shortly after the issuance of the Decision & Order.

51. It is the Trustee's understanding that the appellate briefs were fully submitted to the Appellate Division in mid-2019 and oral argument was conducted on March 3, 2020. Both of these events occurred well before the Order for Relief was entered.

52. The Trustee is seeking an Order of this Court modifying the automatic stay, to the extent that it is applicable, to permit the entry of the Decision & Order of the Appellate Division.

53. To the extent that Ms. Barnett is entitled to any damages from the Estate, she may file a proof of claim and provide this Court with the documentary evidence supporting her claim that should have been supplied to the State Court.

54. In *In re Sonnax Indus.*, Inc., 907 F.2d 1280, 1286 (2d Cir. 1990), the Second Circuit set forth a non-exhaustive list of factors to consider on motions to vacate the automatic stay. They are:

> (1) whether relief would result in a partial or complete resolution of the issues;
>
> (2) lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the other proceeding involves the debtor as a fiduciary;
>
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
>
> (6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

55. The facts herein present an unusual circumstance to which many of the *Sonnax* factors are inapplicable. However, they do provide some relevant guidance.

56. For instance, vacating the stay would facilitate the vacating of the Default Judgment for the benefit of the creditors of the Debtor's Estate (factor 2). It would also permit this Court, which has expertise in determining and resolving any proofs of claim, to finally determine those claims (factor 4).

57. Factors 7, 10 and 11 also favor vacating the stay, as the Trustee is seeking to protect the creditors of the Debtor's Estate.

58. Ms. Barnett would be protected since she would be provided with the opportunity to present to this Court whatever documentary evidence exists to support her claims. Even if the State Court conducted an inquest, Ms. Barnett would still need to participate in the claims process through the Bankruptcy Court.

59. Further, an inquest may be avoided if Ms. Barnett submits the required evidence with her proof of claim.

60. Based on the foregoing, this Court should modify the automatic stay.

## AN AMOUNT EQUAL TO THE RESTRAINED FUNDS SHOULD BE DELIVERED TO THE TRUSTEE

61.     In addition, since the Default Judgment has been vacated, Ms. Barnett and LHA should return an amount equal to the amount of the Restrained Funds.

62.     If Ms. Barnett and LHA do not tender the restrained amount to the Trustee, they will be unjustly enriched to the detriment of the Debtor's creditors. As such, the Trustee is seeking a judgment against Ms. Barnett and LHA in the amount of the Restrained Funds.

63.     "Under Federal Rule of Civil Procedure 69(a), the procedure to enforce a money judgment in federal court is governed by the procedure of the state where the court is located - in this case, New York's Civil Practice Law and Rules ('CPLR')." *Flame S.A. v. Primera Mar. (Hellas) Ltd.*, 2010 U.S. Dist. LEXIS 9830, at *6 (S.D.N.Y. Jan. 28, 2010).

64.     Ms. Barnett and her counsel received funds as a result of LHA's issuance of restraining notice under CPLR 5222 (annexed hereto as Exhibit "M" is a copy of the restraining notice), and an execution through a New York City Marshal. (*See* Ex. K, ¶ 17.)

65.     By impermissibly seeking and obtaining a Default Judgment, Ms. Barnett gained an unfair advantage and was able to utilize judgment enforcement devices that should not have been available to her.

66.     In *Down E. Seafood v. Sibling Fuel Co.*, 64 Misc. 3d 1220(A), 117 N.Y.S.3d 466 (Civ. Ct. New York Co. 2019), the court noted that "[g]iven that [p]laintiff was aware at the time it executed on the judgment that [d]efendant had appeared by counsel and promptly moved to vacate the default, and that said application was in fact pending before the court, it would have been better practice to refrain from collecting upon the judgment until the court had made a ruling,

notwithstanding the fact that [d]efendant had inadvertently failed to include a request for an interim stay." *Down E. Seafood, Inc.*, 117 N.Y.S.3d 466, *4-5.

67. Here, counsel for Ms. Barnett permitted the Restrained Funds to be disbursed despite being aware of the motion to vacate the default judgment. (*See, supra*, ¶ 42.)

68. In reaching its decision, the court in *Down E. Seafood, Inc.* relied, in part, on CPLR 5015(d), which provides as follows: "Restitution. Where a judgment or order is set aside or vacated, the court may direct and enforce restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal." (Lexis, 2020.)

69. The court in *Down E. Seafood, Inc.* noted that "CPLR § 5015(d) addresses restitution and provides '(w)here a judgment ... is ... vacated, the court may direct and enforce restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal.' The reference to appeals is a reference to CPLR § 5523." *Down E. Seafood, Inc.*, 117 N.Y.S.3d 466, *3.

70. CPLR § 5523 provides that "[a] court reversing or modifying a final judgment or order or affirming such a reversal or modification may order restitution of property or rights lost by the judgment or order, except that where the title of a purchaser in good faith and for value would be affected, the court may order the value or the purchase price restored or deposited in court.

71. CPLR § 5523 "recognizes that a court correcting an error requires the power to grant full relief in order to restore the parties to their prior position before the error was made. Without it, reversal or vacatur would leave the winner with only a pyrrhic victory, and the loser in continued possession of erroneously gotten gains. Rather than requiring the winner to commence an entirely new action, and obtain jurisdiction yet again, the court can direct the parties already

before it to do the right thing." *Chase Manhattan Bank, U.S.A., N.A. v. Kassam*, 167 Misc. 2d 933, 935, 640 N.Y.S.2d 1001, 1003 (Civ. Ct. 1996).

72.     In *M.S. Berkoff Co., Inc. v. McGuire*, 54 Misc. 3d 82, 48 N.Y.S.3d 870 (App. Term, Second Department, 2017), the court recognized that "[w]hen money is collected upon an erroneous judgment which, subsequent to the payment, is reversed, the legal conclusion is that the money belongs to the person from whom it was collected and an action for restitution will lie. cf. CPLR 5015 [d] [in the alternative, the court could have awarded restitution upon vacating the judgment])."

73.     Based on the foregoing authorities, an amount equal to the Restrained Funds should be delivered to the Trustee in the sum of $38,682.14.

74.     No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       November 10, 2020

Weinberg, Gross & Pergament LLP
Attorneys for Trustee

By: _____
    Marc A. Pergament
    400 Garden City Plaza, Suite 403
    Garden City, New York 11530
    (516) 877-2424