**OLSHAN FROME WOLOSKY LLP**
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2200
Michael S. Fox, Esq.
Thomas J. Fleming, Esq.
Jonathan T. Koevary, Esq.

**Hearing Date: August 23, 2021 at 9:30 a.m.**
**Objection Deadline: August 16, 2021 at 4:00 p.m.**

***Special Counsel to the Chapter 7 Trustee***

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>DIAMOND FINANCE CO., INC.<br><br>      Debtor. | Case No 20-71877-reg<br><br>Chapter 7 |

**NOTICE OF HEARING FOR CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO
BANKRUPTCY CODE SECTION 105 AND RULE 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ENTRY OF AN
ORDER AUTHORIZING
AND APPROVING STIPULATION WITH MARCOS BENZAQUEN**

PLEASE TAKE NOTICE, that Marc Pergament, Trustee ("Trustee") for the above-captioned debtor and debtor in possession (the "Debtor") will move before the Honorable Robert E. Grossman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Courtroom 860, Central Islip, NY 11722, on  August 23, 2021 at 9:30 a.m. (ET) or as soon thereafter as Counsel may be heard for the entry of an Order, substantially in the form of proposed order annexed hereto to approve the stipulation between and among the Trustee and Marcos Benzaquen under sections 105 and 9019 of the Bankruptcy Code and for such other and further relief.

5917530-1

PLEASE TAKE FURTHER NOTICE, that pursuant to Local Bankruptcy Rule 9072-1, objections if any, shall be in writing, shall conform to the Bankruptcy Code, the Bankruptcy Rules and Local Rules and Administrative Orders of the Bankruptcy Court, shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system and, by all other parties in the interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format and so as to be actually received no later than August 16, 2021 at 4:00 p.m. (ET) upon: (i) Special Counsel to the Trustee, Olshan Frome Wolosky LLP, 1325 Avenue of Americas, New York, New York 10019, Attn: Michael S. Fox, Esq. and (iii) the Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, NY 11722, Attn: Christine Black, Esq.  A hard copy of the Objection, if any shall be hand delivered directly to Chambers of the Honorable Grossman on or before August 16, 2021

Dated: July 29, 2021
      New York, New York

                        OLSHAN FROME WOLOSKY LLP

                        By:  */s/ Jonathan T. Koevary*
                              Michael S. Fox
                              Thomas J. Fleming, Esq.
                              Jonathan T. Koevary
                              1325 Avenue of the Americas
                              New York, New York 10019
                              (212) 451-2300

                              *Special Counsel to the Chapter 7*
                              *Trustee*

5917530-1

**OLSHAN FROME WOLOSKY LLP**
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2200
Michael S. Fox, Esq.
Thomas J. Fleming, Esq.
Jonathan T. Koevary, Esq.

**Hearing Date: August 23, 2021 at 9:30 a.m.**
**Objection Deadline: August 16, 2021 at 4:00p.m.**

*Special Counsel to the Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| DIAMOND FINANCE CO., INC., | Case No. 20-71877 (REG) |
| Debtor. | |

**CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY CODE SECTION 105 AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING STIPULATION WITH MARCOS BENZAQUEN**

Marc Pergament, (the "Trustee") chapter 7 trustee for the above captioned debtor

Diamond Finance Co., Inc. ("DFC" or the "Debtor") by and through his undersigned counsel,

hereby submits this Motion (the "Motion") for entry of an order, pursuant to section 105(a) of

title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving the stipulation

(the "Stipulation") between and among the Trustee and Marcos Benzaquen ("Benzaquen"),

individually attached as Schedule 1 to the proposed order (the "Order") that is attached as Exhibit A hereto.[1]  In support of this Motion, the Trustee respectfully states as follows:

## General Background

1.      Through this Motion, the Trustee seeks entry of the Order approving the Stipulation that would resolve claims for reimbursement of legal fees and expenses against Benzaquen in connection with acts that lead to this Court's entry of multiple contempt orders against Benzaquen. The Stipulation does not resolve the pending adversary proceeding against Benzaquen or any other claims the estate may have against him.

## Jurisdiction

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief requested herein is Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

## Fees and Expenses in Connection with the Contempt Order

4.      As set forth in the *Motion of the Chapter 7 Trustee Seeking an Order of Contempt and Sanctions Against Marcos Benzaquen,* dated October 20, 2020 [Dkt. No. 127] (the "Contempt Motion"), which is fully incorporated herein, for several months in 2020, Benzaquen engaged in a pattern of evasive conduct to avoid service of multiple Rule 2004 subpoenas executed on behalf of the Trustee pursuant to orders of this Court.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

2

5.      These evasions led to this Court's entry of an Order granting the Contempt Motion dated November 10, 2020 [Dkt. No. 132] (the "Contempt Order").  Among other things, the Contempt Order sanctioned Benzaquen $500 per day from the date of the Contempt Order until he fully complied with the subpoena.

6.      It is the Trustee's position that it took 10 days for Benzaquen to comply with the underlying subpoena, leading to a sanction of $5,000. That sanction has not been paid.

7.      The Contempt Order also reserved the Trustee's right to seek reimbursement of fees. Olshan Frome Wolosky LLP as special counsel to the Trustee, incurred fees in excess of $27,000 and incurred expenses in excess of $3,500 in seeking enforcement of the subpoenas against Benzaquen directly arising from Benzaquen's evasion. These are fees that would not have been incurred but for the acts giving rise to Benzaquen's contempt. For example, they do not cover the initial Rule 2004 motion and they do not cover expenses incurred in conducting the Rule 2004 investigation once Benzaquen was in compliance.

8.      Thus the Trustee's position is that in connection with the Contempt Order, Benzaquen should be liable for at least $35,500.

9.      Benzaquen disputes the reasonableness of having to pay $35,500.  In addition, the Trustee has concerns over Benzaquen's ability to pay. Therefore, the Trustee and Benzaquen entered into the Stipulation.

### The Stipulation

10.      The Stipulation provides in pertinent part [2] that Benzaquen shall pay up to a total of $17,500 (the "Settlement Sum") to resolve the Contempt Order, as follows:

---

[2] The description is a summary only.  In case of any discrepancy between the summary and the Stipulation, the Stipulation shall control.

5914540-2

- $5,000 within seven (7) days of the Execution Date (the "First Installment");

- $12,500 by January 26, 2022 (the "Second Installment"), provided however that the Second Installment shall be reduced to $5,000 if such amount is paid in full prior to January 26, 2022 and the Settlement Sum shall be deemed fully satisfied.

- The Settlement Sum shall be payable to "Marc A. Pergament as Trustee."[3]

- The Stipulation will become effective on the date the Court enters an order approving the Stipulation (the "Effective Date"), provided however the First Installment $5,000 (the "First Installment") to be wired to "Marc A. Pergament as Trustee" to be held pending the occurrence of the Effective Date and after such time shall be released and paid in accordance with Paragraph 5 thereto.

- If the Effective Date does not occur within ninety days following the Execution Date, the Trustee shall return the First Installment to Benzaquen and the Parties' rights shall be fully reserved in connection with the Contempt Motion.

### **Relief Requested**

11.     By this Motion, the Trustee seeks entry of an Order approving the Stipulation.

12.     The Trustee submits that the Stipulation is more than reasonable and provides a clear benefit to the Debtor's estate.

---

[3] The Stipulation does not contemplate payment directly to Olshan – a request that Olshan had put on the record at a previous hearing announcing the settlement in principle and no longer seeks.

4

## Basis for Relief Requested

13.     Compromises and settlements are a normal part of the bankruptcy process.

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), *cert. denied*, 391 U.S. 909 (1968), *citing Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 130 (1939).  The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.,* 624 F.2d 599 (5th Cir. 1980).  Resolution of claims through settlement  furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation."   *In re Carla Leather, Inc.,* 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984), *affd*. 50  B.R. 764 (S.D.N.Y. 1985).  While debtors are free to pursue litigation on behalf of the estate, it "is to exercise prudence and at the same time be in a position so as to act on a settlement opportunity when that opportunity arises." *Carla Leather*, 44 B.R. at 472.

14.     Bankruptcy Rule 9019(a) permits the Court to approve a compromise or settlement.  The Rule provides:

> (a)     <u>Compromise</u>. On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the  debtor, and indenture trustees as provided in Rule 2002 and to  any other entity as the court may direct.

Fed. R. Bankr. Pro. 9019(a).  Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval.

5

15.    However, the standards for approval of settlements in bankruptcy are well established in precedent, focusing on the proposed settlement's reasonableness and its fairness to creditors.  In *TMT Trailer*, 390 U.S. 414, the seminal case on approval of settlements in bankruptcy cases, the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*TMT Trailer,* 309 U.S. at 424 (citations omitted).

16.    The United States Court of Appeals for the Second Circuit has stated that the responsibility of the judge "is not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.' " *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *In re Purofied Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990); *In re Carla Leather, Inc.,* 44 B.R. 457, 470 (Bankr. S.D.N.Y. 1984), *aff'd,* 50 B.R. 764 (S.D.N.Y. 1984). The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather*, 44 BR. at 470.

17.    In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if [in order to

6

approve a settlement] bankruptcy courts [were required to conduct] an exhaustive investigation and determination of the underlying claims" in order to approve a settlement. *Purofied Down Products*, 150 B.R. at 522-23. In *Carla Leather*, the Court explained the policy underlying the abridged review of settlements in bankruptcy as follows:

> The very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.

*Carla Leather*, 44 B.R. at 470; *see also Purofied Down Products*, 150 B.R. at 522-23.

18.     In evaluating the propriety of a settlement in concert with the foregoing factors, the court need not conduct a trial on the merits (nor a "mini-trial," nor "a rehearsal of the trial") to actually resolve the extant factual and legal issues. The court must simply determine whether, considering all of the relevant issues, the settlement is reasonable. *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972); *see also In re International Distribution Centers, Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) ("*Drexel I*"). These issues may include the court's familiarity with the history of the case, the complexity of the claims alleged, the status of the parties, and the context in which the claims arose. *TMT Trailer*, 390 U.S. at 444; *Purofied Down Products*, 150 B.R. at 519, 524; *International Distribution Centers*, 103 B.R. at 423.

19.     The settlement evaluation process is not designed to substitute the court's judgment for that of a debtor or a trustee. See in re: *Carla Leather*, 44 B.R. at 465. While a court is not expected to "rubber stamp" the debtor's proposed settlement, *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), the court should give considerable weight to a debtor's, or in this case, the Trustee's, informed judgment that a compromise is fair and

7

equitable. *Anderson*, 390 U.S. at 444; *International Distribution Centers*, 103 B.R. at 423; *Drexel I*, 134 B.R. at 496; *Carla Leather*, 44 B.R. at 472.

20.     As articulated by the District Court in *International Distribution Centers*, when determining the wisdom of a compromise, the court should give weight to not only the debtor's opinion, but to those of other counsel to a settlement as well.  *International Distribution Centers*, 103 B.R. at 423.  Ultimately, a court should consider both the proponents' opinions as well as its own independent evaluation of the arguments for and against the settlement in order to determine whether a settlement should be approved.  *Purofied Down Products*, 150 B.R. at 523.

21.     The court, appraised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness.  *Purofied Down Products*, 150 B.R. at 523-24; *In re Texaco, Inc*., 84 B.R. 893, 901 (Bankr. S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988).  The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances.  *See W.T. Grant*, 699 F.2d at 6 13-14; *Newman v. Stein*, 464 F.2d at 693; *Purofied Down Products*, 150 B.R. at 523-24.  The concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion."  *Newman v. Stein*, 464 F.2d at 693. Thus, a court need not insist upon the best possible settlement, but may approve a settlement that is within the range of reasonableness under the circumstances.

22.     In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interests of creditors, courts in the Second Circuit follow the analysis first articulated by the Supreme Court in *TMT Trailer*, as developed and applied by the case law.  In so

following, courts judge a proposed settlement based on a consideration of *some or all* of the

following factors:

(i)     the relative benefits to be received by creditors under the proposed settlement;

(ii)    the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;

(iii)   the prospect of complex and protracted litigation if settlement is not approved;

(iv)    the attendant expense, inconvenience and delay of litigation;

(v)     the probable difficulties of collecting on any judgment that might be obtained;

(vi)    the competency and experience of counsel who support the proposed settlement;

(vii)   the extent to which the settlement is the product of arm's-length bargaining, and not the product of fraud or collusion;

(viii)  the nature and breadth of any releases to be issued as a result of the proposed settlement; and

(ix)    the paramount interest of the creditors and proper deference to their reasonable views.

*See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993); *Purofied Down Products*, 150 B.R. at 522; *International Distribution Centers*, 103 B.R. at 422; *In re Fugazy*, 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel I*, 134 B.R. at 497; *In re Drexel Bumham Lambert Group, Inc.*, 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991) ("*Drexel II*"); *Crowthers McCall*, 120 B.R. at 287; *Texaco*, 84 B.R. at 901; *Lion Capital Group Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *Carla Leather*, 44 B.R. at 466; *In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir. 1983); *see also In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980); *Drexel v. Loomis*, 35 F.2d 800, 808 (8th Cir. 1929).

## The Proposed Settlement is Fair and Equitable, Reasonable and in the Best Interests of Creditors

23.     The paramount interest of creditors in any bankruptcy case is to recover the greatest amount for creditors.  Here the Stipulation provides for an opportunity for the estate to recover some of the funds expended in connection with pursuit of its remedies against Benzaquen.  Seeking reimbursement of the entire sum of $35,500 would have likely required significant litigation which would carry partial risk and certain expense in addition to credit risks in connection with repayment.

24.     In contrast, the Stipulation: (a) provides an immediate $5,000 payment plus a future payment ranging from $5,000 to $12,500; (b) provides certainty with respect to the immediate payment, while avoiding the costs and risks inherent in the litigation that would otherwise ensure. The Trustee submits that the Stipulation furthers the paramount interests of the Debtor's creditors and its estate.

### Supported by Business Judgment

25.     Alternatively, this Court should approve the relief requested in the Motion with respect to settlement of the Alleged Claims where the Trustee demonstrates a sound business justification therefor.  *See In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him a good business reason to grant the application")*; see also In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

26.     Once a debtor (or trustee) articulates a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Official Comm. of Subordinated Bondholders v. Integrated Res.,*

10

*Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1990). Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence. *Id.* Here, more than ample business justification exists.

27.    Additionally, Bankruptcy Code section 105(a) empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]. The purpose of section 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." *In re Casse*, 198 F.3d 327, 336 (2d Cir. 1999); *In re The 1031 Tax Group, LLC,* 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008).

28.    As discussed above, the Stipulation represents the Trustee's sound business judgment. The estate will receive $5,000 without concern of continued litigation that would have its respective costs and risks, plus a payment of $5,000 to $12,500 in the future.

29.    Accordingly, the Trustee submits that entry into the Agreement is supported by the exercise of his sound business judgment.

### Reservation of Rights

30.    Nothing herein shall be construed as an admission of any liability or waiver of any rights of the Trustee or this estate.

### Notice

31.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) all parties required to receive notice under Bankruptcy Rule 2002; (iii) Counsel for the Debtor; and (iv) the parties on the master service list established by the Court on June 30, 2020. The Trustee submits that such notice is sufficient under the circumstances.

11

## **No Previous Request**

32.     No previous request for the relief sought herein has been made to this or any other

Court.

WHEREFORE the Trustee respectfully requests entry of the proposed Order, annexed

hereto as Exhibit A, granting the relief requested herein and such other and further relief as the

Court may deem just and appropriate.

Dated: July 29, 2021
       New York, New York

OLSHAN FROME WOLOSKY LLP

By:   /s/ *Jonathan T. Koevary*
       Michael S. Fox
       Thomas J. Fleming
       Jonathan T. Koevary
       1325 Avenue of the Americas
       New York, New York 10019
       (212) 451-2300

       *Special Counsel to the Chapter 7*
       *Trustee*

## **EXHIBIT A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| DIAMOND FINANCE CO., INC., | Case No. 20-71877 (REG) |
| Debtor. | |

## ORDER GRANTING MOTION PURSUANT TO BANKRUPTCY CODE SECTION 105 AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING STIPULATION WITH MARCOS BENZAQUEN

Upon consideration of the motion (the "Motion")[1] of Marc Pergament as Trustee

for the Diamond Finance Co., Inc. estate for an order, pursuant to section 105(a) of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing and approving the Settlement Agreement (the

"Agreement") attached as Schedule 1 hereto; and due and sufficient notice of the Motion having

been given under the particular circumstances; and this Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration

of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

it appearing that the relief requested by the Motion is in the best interests of the Debtor, its estate,

its creditors, its stakeholders, and other parties in interest; and after due deliberation thereon, and

sufficient cause appearing therefor, it is hereby

### ORDERED, ADJUDGED AND DECREED that:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

5914540-2

1.      The Motion is GRANTED as set forth herein.

2.      The Stipulation attached as Schedule 1 hereto is hereby approved.

3.      This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this Order.

_____
Hon. Robert E. Grossman
United States Bankruptcy Judge

5914540-2

# <u>SCHEDULE 1</u>:

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| DIAMOND FINANCE CO., INC. | Case No.  8-20-71877 (REG) |
| Debtor. | |

### STIPULATION AND ORDER RESOLVING AMOUNTS PAYABLE IN ACCORDANCE WITH  MOTION OF THE CHAPTER 7 TRUSTEE SEEKING AN ORDER OF CONTEMPT AND SANCTIONS AGAINST MARCOS BENZAQUEN AND SUBSEQUENT ORDERS OF THE COURT

This stipulation (the "Stipulation") is entered into by and among counsel for (i)

Marc Pergament, the Chapter 7 Trustee (the "Trustee") of the above captioned chapter 7 debtor

and (ii) Marcos Benzaquen ("Benzaquen" and together with the Trustee, the "Parties").

### RECITALS

**WHEREAS**, on October 20, 2020, the Trustee brought its Motion (the "Motion")

in the United States Bankruptcy Court for the Eastern District of New York (the "Court") for

entry of an order pursuant to section 105(a) of title 11 of the United States Code (the

"Bankruptcy Code") and Rules 9016 and 9020 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") for entry of an order holding Benzaquen in contempt thereof, imposing

sanctions, and compelling Mr. Benzaquen to comply with the Trustee's subpoena (the

"Mail Subpoena," issued pursuant to the Court's June 12, 2020 Order ("2004 Order"), directing

the production of documents and oral examination of Marcos Benzaquen [Dkt. No. 127];

**WHEREAS**, on November 10, 2020, the Court entered an order (the "Contempt

Order") granting the Motion [Dkt. No. 132];

5873052-2

WHEREAS, among other things, the Contempt Order provided that (i) Benzaquen would be sanctioned $500 per day until he fully complied with the Mail Subpoena; and (the "Per Diem Sanction") and (ii) the Order was without prejudice to the Trustee's request to seek further relief, including reimbursement of fees and expenses;

WHEREAS, the Trustee has taken the position that Benzaquen was not in full compliance until ten (10) days after the Contempt Order was served making the total aggregate Per Diem Sanction equal $5,000 (the "Per Diem Amount");

WHEREAS, Olshan Frome Wolosky LLP, as special counsel to the Trustee, asserts that it incurred over $3,500 in out of pocket expenses (the "Expenses") and over $27,000 in legal fees (the "Legal Fees") in connection with enforcing the Mail Subpoena that it would not have otherwise incurred for which the Trustee seeks reimbursement;

WHEREAS, the total amount sought from Benzaquen in connection with the Contempt Order is in excess of $37,500 comprising of the Per Diem Amount, the Expenses, and the Legal Fees;

WHEREAS, Benzaquen disputes the reasonableness of the Expenses and Legal Fees sought.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the Parties, by their respective undersigned counsel, in consideration of the foregoing recitals and the promises set forth herein, which are subject only to Court approval, as follows:

1.      The foregoing recitals are hereby fully incorporated into and made an express part of this Stipulation.

2

5873052-2

2.      Benzaquen shall pay a total of $17,500 to resolve the Contempt Motion as fully set forth herein and subject to approval of the Court.

3.      The Trustee, by and through its counsel, will seek entry of an Order approving this Stipulation within sixty days after the Parties fully execute the Stipulation (the "Execution Date").

4.      Benzaquen shall pay up to a total of $17,500 (the "Settlement Sum") to resolve the Contempt Order, as follows:

(a) $5,000 within seven (7) days of the Execution Date (the "First Installment");

(b) $12,500 by January 26, 2022 (the "Second Installment"), provided however that the Second Installment shall be reduced to $5,000 if such amount is paid in full prior to January 26, 2022, and the Settlement Sum shall be deemed fully satisfied.

5.      The Settlement Sum shall be payable to "Marc A. Pergament as Trustee."

6.      This Stipulation will become effective on the date the Court enters an order approving the Stipulation (the "Effective Date"), provided however the First Installment wire $5,000 (the "First Installment") to "Marc A. Pergament as Trustee" to be held pending the occurrence of the Effective Date and after such time shall be released and paid in accordance with Paragraph 5 hereto.

7.      If the Effective Date does not occur within ninety days following the Execution Date, the Trustee shall return the First Installment to Benzaquen and the Parties' rights shall be fully reserved in connection with the Contempt Motion.

5873052-2

8.      Nothing in this Stipulation resolves any issue or dispute between the Parties other than disputes arising directly from the Motion and Contempt Order. For the avoidance of doubt, nothing in this Stipulation resolves any claim of the Trustee asserted against Benzaquen in the adversary proceeding brought in the above captioned case captioned *Pergament v. Auto City International, Inc., et al.,* No. 21-08051 (REG).

9.      The Court shall retain jurisdiction to hear and determine any and all disputes arising from or relating to the interpretation or implementation of this Stipulation.

10.     This Stipulation shall be binding upon all successors and assigns of the Parties.

11.     This Stipulation may be executed in one or more counterparts, all of which shall be considered one and the same document, including any facsimile or "PDF" counterparts, and which together shall constitute one and the same agreement.

12.     This Stipulation constitutes the entire agreement between the Parties and may not be amended or modified in any manner except by a writing signed by each of the Parties or their counsel.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

5873052-2

IN WITNESS WHEREOF, the Parties have executed this Stipulation as of the date hereof.

Dated: New York, New York
July 2̲ 2021

NICHOLAS GOODMAN &
ASSOCIATES, PLLC

By: _____
Nicholas Goodman
*Attorneys for Marcos Benzaquen*
333 Park Avenue South, Suite 3A
New York, New York 10010
(212) 227-9003

OLSHAN FROME WOLOSKY LLP

By: _____
Michael S. Fox
Jonathan T. Koevary
*Attorneys for the Chapter 7 Trustee*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

So Ordered:

_____
Marcos Benzaquen

5

5873052-2